**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 22-3463

————————

BENJAMIN LUNA-MENDEZ,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

————————

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A089-243-205)
Immigration Judge:  Mary C. Lee

————————

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 17, 2025

————————

Before:  PHIPPS, FREEMAN, and CHUNG, *Circuit Judges*

(Filed: February 3, 2025)

————————

OPINION*

————————

PHIPPS, *Circuit Judge*.

In 2022, a native and citizen of Mexico who had been twice previously removed

from this country, in 2001 and in 2010, was again ordered removed.  He sought cancellation

of that removal order, *see generally* 8 U.S.C § 1229b(b) (setting forth cancellation as a

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

form of relief from removal), and an immigration judge denied his request because he did not satisfy two of the four statutory prerequisites for cancellation: he did not have ten years of continuous presence in the United States, *see id.* § 1229b(b)(1)(A), and his removal would not result in an "exceptional and extremely unusual hardship" to any qualifying relative, *id.* § 1229b(b)(1)(D). On an administrative appeal, the Board of Immigration Appeals upheld that ruling on only the hardship ground. The Mexican national now petitions for review of that final order of removal, and we will deny his petition for the reasons below.

### FACTUAL BACKGROUND

In February 2001, then-sixteen-year-old Benjamin Luna-Mendez crossed into the United States from his native Mexico. He was apprehended almost immediately by the Border Patrol in Douglas, Arizona, inspected by an Immigration Officer, and promptly returned to Mexico. A few weeks after that removal, he returned to the United States by crossing the border somewhere in the Arizona desert. On that occasion, however, Luna-Mendez completed his crossing undetected and was therefore not inspected or paroled by an Immigration Officer or Border Patrol agent. *See generally* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.").

Luna-Mendez remained in the United States without incident until 2004. In March of that year, he was cited for, and pleaded guilty to, public drunkenness and fighting in Norristown, Pennsylvania. *See* 18 Pa. Cons. Stat. § 5505 (outlawing public drunkenness and engaging in fighting). In September, he was arrested in Plumsted Township, Pennsylvania for driving under the influence and without a valid license. *See* 75 Pa. Cons.

2

Stat. § 3802 (criminalizing driving under the influence); *id.* § 1501 (same, without a license). Following that DUI arrest, Luna-Mendez was released, but he failed to appear for his arraignment. Afterward, the Court of Common Pleas issued a bench warrant for his arrest.

It took years to effectuate that warrant. Although Luna-Mendez was again cited in Norristown, Pennsylvania for public drunkenness in December 2008, he was not arrested pursuant to the outstanding warrant. *See* 18 Pa. Cons. Stat. § 5505. In November 2009, however, the bench warrant from his 2004 DUI was executed, and Luna-Mendez was detained at the Bucks County Correctional Facility. After pleading guilty to the DUI, Luna-Mendez was incarcerated at York County Prison. While detained, federal immigration agents approached Luna-Mendez and offered him the option of voluntary removal. He accepted and returned to Mexico in April 2010.

Luna-Mendez stayed in his hometown in Mexico for only a few weeks before crossing the southern border once more in May 2010. He again crossed undetected, without inspection or parole. *See* 8 U.S.C. § 1182(a)(6)(A)(i). After that illegal reentry, Luna-Mendez resided continuously in Norristown, Pennsylvania, with his three children, all of whom are United States citizens, and one of whom was born after his 2012 reentry. The mother to Luna-Mendez's children also continuously resided in the same house, though the two are no longer in a relationship outside of their joint parenting responsibilities.

In February 2013, based on a tip that Luna-Mendez was an illegal alien, Department of Homeland Security agents arrested him in Norristown. He was charged with removability as an unauthorized alien, *see id.* § 1182(a)(6)(A)(i), and detained by

Immigration and Customs Enforcement but released two weeks later subject to an $11,000 bond.

## PROCEDURAL HISTORY

In the proceedings before the Immigration Court, Luna-Mendez conceded removability as an unauthorized alien, *see* 8 U.S.C. § 1182(a)(6)(A)(i), but he applied for cancellation of removal, *see id.* § 1229b(b).  In an oral decision issued on August 6, 2019, the Immigration Judge explained that Luna-Mendez did not meet two of the four statutory prerequisites for cancellation of removal: a ten-year continuous physical presence in the United States, *see id.* § 1229b(b)(1)(A), and an "exceptional and extremely unusual hardship" for an immediate family member who is a United States citizen or permanent resident, *id.* § 1229b(b)(1)(D).  In her decision, the Immigration Judge was express that she was evaluating the hardship requirement "in the aggregate."  Oral Decision at 7 (AR79).  As a post-script to her evaluation of the statutory prerequisites, the Immigration Judge indicated that if the four statutory prerequisites would have been met, then as a matter of discretion, she would have granted Luna-Mendez's application for cancellation of removal.

Luna-Mendez contested the Immigration Judge's finding of his ineligibility for cancellation through an administrative appeal to the BIA.  In ruling on his administrative appeal on December 1, 2022, the BIA first acknowledged the open docket items before it.  Those consisted of Luna-Mendez's challenges to the Immigration Judge's factual findings as well as his motion to administratively close proceedings.  The BIA did not make any mention of a motion to remand, but Luna-Mendez now asserts that, while the appeal was pending, specifically on September 27, 2022, he submitted a motion to remand the case to the Immigration Court on the grounds that there was newly discovered evidence about one of his children's medical care that required reassessment of the hardship requirement.  The

4

agency did not include that motion in the certified administrative record, and the copy Luna-Mendez now includes in his appendix to this petition was not file-stamped by the agency – as are his other filings with the BIA that have been included in the administrative record.

On the merits, the BIA upheld the Immigration Judge's order, but on only one ground: the hardship requirement.[1]  The BIA approved of the Immigration Judge's approach of evaluating the hardship requirement in the aggregate as that approach was based on a "totality of the circumstances."  BIA Op. at 2 (AR4).  But because under that standard Luna-Mendez did not "establish hardship that is 'substantially beyond the ordinary hardship that would be expected when a close family member leaves this country,'" the BIA dismissed his appeal.  *Id.* (quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 62 (B.I.A. 2001)).

Through a timely petition, Luna-Mendez now challenges that final order of removal on two grounds.  First, he argues that the BIA should have granted his motion to remand the proceedings to the Immigration Judge to reconsider the hardship requirement in light of new information about his child's medical care.  Second, he contends that the hardship analysis should have reflected the aggregate hardship on each of his three children and that both the Immigration Judge and the BIA erred in evaluating the hardship requirement.

## DISCUSSION

Neither of Luna-Mendez's arguments have merit.

His failure-to-remand contention rests on information outside of the certified administrative record: a purported motion to remand that he now asserts he filed with the

---

[1] The BIA did not rely on the ten-year continuous presence requirement because under intervening Supreme Court precedent, *see Niz-Chavez v. Garland*, 593 U.S. 155 (2021), it appeared that Luna-Mendez would have met that requirement.

5

BIA. By statute, the general rule is that "the court of appeals shall decide the petition only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A); *see Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 340 (3d Cir. 2008) (confining review "solely to the administrative record"); *but cf.* 8 U.S.C. § 1252(b)(5)(B) (creating an exception to the record rule for material disputes of United States citizenship). And no such motion to remand appears in the administrative record. Therefore, any such motion to remand cannot provide a basis for granting his petition.

Luna-Mendez's challenge to the agency's evaluation of the hardship requirement fares no better. He argues that the agency misapplied the legal standard for hardship. Whether the BIA applied the correct legal standard is a question of law, and therefore reviewed *de novo* by this Court. *See Gomez-Zuluaga*, 527 F.3d at 339. Based on a prior BIA decision to which the agency affords precedential weight,[2] *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56 (B.I.A. 2001), he argues – and the Government does not dispute – that the hardship requirement should account for the aggregate hardship to his children – not to any one child individually. Assuming *arguendo* the correctness of the legal standard articulated in *Monreal-Aguinaga*,[3] the decisions by the Immigration Judge and BIA satisfy it. The Immigration Judge expressly stated that she considered hardship "[i]n the aggregate," Oral Decision at 7 (AR67), and in reviewing that decision, the BIA recognized that the Immigration Judge had considered "the totality of the circumstances," BIA Op. at 2 (AR4).

\* \* \*

For these reasons, we will deny the petition.

---

[2] *But cf.* 5 U.S.C. § 551 (defining "rule"); *id.* § 553 (setting forth rulemaking procedures).

[3] *But cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) (rejecting controlling deference to agency interpretations of law).